1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**SOUTHERN DISTRICT OF CALIFORNIA**

9

10   SARA HARRIS,                                                    CASE NO. 08cv2111-WQH-AJB

11                                           Plaintiff,              **ORDER**

                    vs.
12   SYCUAN BAND OF DIEGUENO
     MISSION INDIANS, DOES I-X,
13

14                                           Defendants.

HAYES, Judge:
15

16          The matter before the Court is the Motion to Dismiss the Second Amended Complaint,

17   filed by Defendant Sycuan Band of Diegueno Mission Indians ("Sycuan").  (Doc. # 25).

**I.      Background**
18

19          On November 17, 2008, Plaintiff Sara Harris initiated this action by filing a Complaint.

20   (Doc. # 1).  The Complaint sought to enforce an arbitration award totaling $160,000 for

21   physical injuries allegedly suffered by Harris as a result of the conduct of one of Sycuan's

22   employees.  The Complaint alleged that the Court had subject matter jurisdiction pursuant to

23   the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*  On March 2, 2009, this Court

24   issued an order granting Sycuan's motion to dismiss, and dismissing the Complaint for lack

25   of subject matter jurisdiction.  (Doc. # 10).  The Court held that Harris failed to satisfy her

     burden of establishing subject matter jurisdiction.
26

27          On April 1, 2009, Harris filed the First Amended Complaint ("FAC").  (Doc. # 11).

28   The FAC again alleged that the Court had jurisdiction over the case pursuant to the FAA.  The

     FAC alleged that "all claims for damages for physical injuries against defendant [] were

governed by a 'Tort Claims Ordinance'" ("Ordinance") duly enacted by Sycuan.  (FAC ¶ 6). The FAC alleged that Harris pursued her claim pursuant to the Ordinance, and that Harris ultimately received an arbitration decision awarding Harris the sum of $160,000.  The FAC alleged that the Ordinance was enacted to comply with the class three gaming compact ("Compact") between Sycuan and the State of California, which in turn derives from the Indian Gaming and Regulation Act ("IGRA"), 25 U.S.C. § 2710.  (FAC ¶ 10).  The FAC alleged: "By failing to honor plaintiff's finally adjudicated claim for damages, pursuant to the [Ordinance], [Sycuan] stands in violation of that ordinance, the underlying [Compact], and the provisions of 25 U.S.C. section 2710."  (FAC ¶ 12).

On April 13, 2009, Sycuan filed a motion to dismiss the FAC for lack of jurisdiction. (Doc. # 12).  After receiving briefing from the parties, the Court conducted oral argument on the motion to dismiss. (Doc. # 22).  On June 30, 2009, the Court issued an order granting the motion to dismiss and dismissing the FAC for lack of subject matter jurisdiction.  (Doc. # 23).

On July 29, 2009, Harris filed a Second Amended Complaint ("SAC"), which is the operative complaint in this action.  (Doc. # 24).  The SAC alleges that "[t]he Court has jurisdiction over the instant case pursuant to 28 U.S.C § 1331, 25 U.S.C § 2710 and the Federal Arbitration Act, 9 U.S.C § 1 et seq."  (SAC at 1).

### A.   Allegations of the SAC

Sycuan "is an Indian Tribe having a governing body duly recognized by the Secretary of the Interior."  (SAC ¶ 2).  At all relevant times, Harris and Sycuan were residents of San Diego County.

On November 26, 2004, Harris was a patron of the Sycuan Casino, a gaming establishment owned and operated by Defendant Sycuan.  "At that place and time, plaintiff suffered serious physical injury occasioned by the assaultive conduct of an employee of defendant...."  (SAC ¶ 5).  "[A]ll claims for damages for physical injuries against defendant ... were governed by a 'Tort Claims Ordinance' duly enacted by defendant ... in June 2004." (SAC ¶ 6).  On March 9, 2005, Harris filed a claim under the Ordinance, and on December 5, 2005, "the Sycuan Gaming Commission certified plaintiff's claim for processing on the merits,

pursuant to Section XI of the Ordinance." (SAC ¶ 7).  After Harris's claim was denied by the Sycuan Gaming Commission, "Plaintiff duly appealed the substantive denial of her claim pursuant to Section XII(G) of the ordinance, which provides that an appeal from a substantive denial is to be heard by an arbitrator selected by the Sycuan Gaming Commission.  The Gaming Commission selected Hon. Gerald Lewis, retired appellate justice, as the arbitrator for plaintiff's claim....  On September 30, 2008, Judge Lewis issued his decision and award of arbitrator, awarding plaintiff the sum of $160,000." (SAC ¶ 8).

"Section IX(B) of the Tribal Ordinance states that any award, compromise, settlement or determination of a claim under this ordinance shall be final and conclusive on the Tribe. Section IX(B) further states that 'the decision of an arbitrator on an appeal may be enforced in the United States District Court for the Southern District of California under the Federal Arbitration Act, 9 U.S.C. § 1 et seq.'...  Plaintiff has complied with all conditions required by her under the Tribal ordinance.  Plaintiff has made demand for payment pursuant to the arbitrator's award, and defendant ... has failed and refused to comply with the arbitrator's award." (SAC ¶ 9).

"Defendant ... operates its gaming facility under the terms of the Federal Indian Gaming Regulatory Act ('IGRA') at 25 U.S.C. 2701 et seq.  Section 2710(d) states that 'Class III' gaming activities, conducted by defendant ..., shall be lawful only if conducted in conformance with a Tribal state compact entered into between the Tribe and the State where tribal lands are located.  Section 2710(a)(3)(c) states that such compacts may include provisions relating to the application and enforcement of civil laws and jurisdiction necessary for the licensing and regulation of such gaming activity...." (SAC ¶ 10).

"[T]he Sycuan Tribal Compact contains provisions that the tribe shall provide reasonable assurance that patron tort claims will be promptly and fairly adjudicated, and that the Tribe shall adopt a tort claim ordinance setting forth the terms and conditions under which the Tribe waives immunity from suit for injuries to persons at the gaming facility....  [T]he Gaming Compact incorporates by reference the provisions of IGRA pertaining to the regulation of Indian gaming by the Tribe." (SAC ¶ 11).

"Implicit in the Federal pre-emptive regulation of Indian Gaming and the linked provisions of IGRA, the California Tribal Gaming Compact, and the Tribal Tort ordinance at issue here, is a duty of good faith in the implementation of these enactments.  In doing the things herein above alleged, and in repudiating its own Federally-based tort ordinance, the [Defendant] herein has violated its duty of good faith, all to the prejudice and damage to plaintiff."  (SAC ¶ 13).

Harris seeks judgment "[i]n the amount of $160,000 awarded by the arbitrator."  (SAC at 4).

### B.    Contentions of the Parties

On August 11, 2009, Sycuan filed the Motion to Dismiss the SAC.  (Doc. # 25). Sycuan moves to dismiss the SAC for lack of subject matter jurisdiction.  Sycuan contends that the IGRA cannot supply a basis for federal subject matter jurisdiction "where, as here, enforcement [of the IGRA] is sought by a private third party."  (Doc. # 25-1 at 2).  Sycuan alternatively moves to dismiss the SAC for failure to state a claim on the basis of sovereign immunity: "[T]o the extent that Harris's complaint could be read to base jurisdiction on violations of the Tribe's gaming Compact with the State of California or the Tribe's own Tort Claims Ordinance, those actions would be barred by the Tribe's sovereign immunity from suit." *Id.*

On September 9, 2009, Harris filed an opposition to the Motion to Dismiss.  (Doc. # 26).  Harris contends that federal jurisdiction is supported by Sycuan's alleged "bad faith in implementing provisions of IGRA, the California Tribal Compact derived from IGRA, and the tribe's own tort ordinance."  (Doc. # 26 at 1, citing *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians,* 63 F.3d 1030, 1047 (11th Cir. 1995)).  "It must be emphasized that plaintiff's present complaint does not rest on a claim of direct violation of IGRA or its subsidiary, constituent enactments, but upon a claim of bad faith in the implementation of these enactments."  (Doc. # 26 at 2).  "The alleged bad faith relates to the tribe's continuing attempt to evade the jurisdictional requirement of IGRA, the State Compact, and the Tribe's own tort ordinance."  (Doc. # 26 at 3).  Harris contends that Sycuan waived sovereign immunity in its

1   Tort Claims Ordinance, and Sycuan's Motion to Dismiss constitutes an effort to "repudiate that
2   express waiver." *Id*. According to Harris, Sycuan's "effort at repudiation renders the tort
3   ordinance a farce and a sham, renders the requirements of the State Compact a farce and a
4   sham, and ultimately the balanced structure of IGRA itself." *Id*.

5        On September 10, 2009, Sycuan filed a reply brief. (Doc. # 29). Sycuan contends that
6   Harris "seeks to transform what is manifestly a non-federal issue ... into a federal question by
7   the simple expedient of alleging that Sycuan has acted in bad faith without identifying a federal
8   statutory or regulatory source for this requirement." (Doc. # 29 at 2).

9   **II.    Analysis**

10       "The party asserting jurisdiction bears the burden of establishing subject matter
11  jurisdiction on a motion to dismiss for lack of subject matter jurisdiction.... Dismissal for lack
12  of jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to
13  allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access*
14  *Memory Antitrust Litig. v. Micron Tech., Inc.,* 546 F.3d 981, 985 (9th Cir. 2008).

15       Harris does not allege that diversity jurisdiction exists in this case. Instead, Harris cites
16  to 28 U.S.C. § 1331, which vests in federal district courts jurisdiction over "all civil actions
17  arising under the Constitution, laws, or treaties of the United States." "Under the longstanding
18  well-pleaded complaint rule, ... a suit 'arises under' federal law only when the plaintiff's
19  statement of his own cause of action shows that it is based upon federal law. Federal
20  jurisdiction cannot be predicated on an actual or anticipated defense...." *Vaden v. Discover*
21  *Bank*, 129 S. Ct. 1262, 1272 (2009) (quotation omitted).

22       The SAC references the following possible sources of federal-question subject-matter
23  jurisdiction: (a) the FAA, (b) the Tort Claims Ordinance, (c) Sycuan's Compact with the State
24  of California, (d) the IGRA, and (e) "a duty of good faith in the implementation" of the IGRA,
25  the Compact and the Ordinance (SAC ¶ 13).

26       **A.    FAA**

27       "It is well-established that even when a petition is brought under the Federal Arbitration
28  Act ... a petitioner seeking to confirm ... an arbitration award in federal court must establish

an independent basis for federal jurisdiction." *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 833 (9th Cir. 2004) (citations omitted). The FAA "is something of an anomaly in the realm of federal legislation: It bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden*, 129 S. Ct. at 1271 (quotation omitted). "A federal court may 'look through' [an FAA] petition to determine whether it is predicated on an action that 'arises under' federal law; in keeping with the well-pleaded complaint rule..., however, a federal court may not entertain [an FAA] petition based on the contents, actual or hypothetical, of a counterclaim." *Id.* at 1273.

Accordingly, the FAA does not confer jurisdiction on this Court. In order for this Court to have subject matter jurisdiction over this action, the SAC must allege "an independent jurisdictional basis over the parties' dispute." *Id.* at 1271.

## B.    Ordinance

"An ordinance enacted by a federally recognized Indian tribe is not itself a federal law; the mere fact that a claim is based upon a tribal ordinance consequently does not give rise to federal question jurisdiction. Nor does it suffice that one of the parties to a dispute is an Indian tribe." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1077 (9th Cir. 1990) (citations omitted). "[T]he federal courts do not stand ready to entertain every case arising under a tribal ordinance, when there is no inherent and disputed federal question about the tribe's power to enact it." *Chilkat Indian Village v. Johnson*, 870 F.2d 1469, 1476 (9th Cir. 1989).

In *Morongo Band* and *Chilkat*, the Ninth Circuit held that whether a tribe had the authority to enforce a tribal ordinance against a non-Indian is a federal question. By contrast, "[i]n cases where a Native sovereign has not tried to assert authority over a non-Native party, ... courts have not found a substantial federal question to be present." *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 951 (9th Cir. 2004) (citations omitted). In *Peabody Coal*, the Ninth Circuit considered whether federal question jurisdiction existed over a non-Indian plaintiff's claim seeking enforcement of an arbitration award against a federally-recognized Indian tribe. The award set royalty rates for coal mined pursuant to a lease which had been

approved by the Secretary of the Department of the Interior pursuant to federal law. The Ninth Circuit held that the non-Indian plaintiff's "claim for enforcement of an arbitration award sounds in general contract law and does not require the resolution of a substantial question of federal law." *Id.* The court stated: "Federal approval of the underlying leases or amendments has no material bearing on whether this award requires confirmation or enforcement. Therefore, [plaintiff's] complaint does not present a federal question." *Id.* at 951-52.

In this case, the SAC alleges that the Compact was enacted pursuant to the IGRA, and the Ordinance was enacted pursuant to the Compact. Harris has not alleged that the federal basis of the Ordinance has a "material bearing on whether this [arbitration] award requires confirmation or enforcement." *Id.* Harris also has not alleged that this is a case "where a Native sovereign has ... tried to assert authority over a non-Native party." *Id.* at 951. Instead, this action is analogous to that faced by the court in *Unite Here International Union v. Pala Band of Mission Indians*, 583 F. Supp. 2d 1190 (S.D. Cal. 2008). In *Unite Here*, the court held that federal question jurisdiction did not exist over an action by a union plaintiff against a tribal defendant seeking to confirm an arbitration award made pursuant to a tribal labor relations ordinance. The court stated that, although "gaming compacts are a product of federal law, and ... the [tribal labor relations ordinance] was a valid subject of Compact negotiations," federal jurisdiction did not exist because "[plaintiff] does not allege that [the tribe] is violating any specific IGRA or Gaming Compact provision; whether the [tribe] is somehow in breach of [the] arbitration award is an issue that can be resolved by the common law of contracts." *Id.* at 1197-98.

Finally, the provision in the Ordinance that "the decision of an arbitrator on an appeal may be enforced in the United States District Court for the Southern District of California under the Federal Arbitration Act" (SAC ¶ 9), is insufficient to confer federal question jurisdiction. In *Wisconsin v. Ho-Chunk Nation*, 463 F.3d 655 (7th Cir. 2006), abrogated on other grounds by *Vaden v. Discover Bank,* 129 S. Ct. 1262 (2009), the Seventh Circuit rejected the claim that similar language in a tribal-State compact conferred federal jurisdiction:

> It is ... axiomatic that no court may decide a case without subject matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction

1
2
3
4

> or waive arguments that the court lacks jurisdiction. An Indian tribe's waiver of its sovereign immunity to subject itself to suit does not change this requirement. The provisions in the compact do not alter our determination that [plaintiff]'s complaint does not provide for subject matter jurisdiction over its cause of action. Similarly, our analysis cannot be affected by the availability or unavailability of another forum for this dispute.

*Id.* at 661 (quotation omitted).

5
6

The Court concludes that the allegations in the SAC related to the Ordinance are insufficient to confer federal question jurisdiction.

7
8

**C.    Compact**

9
10
11
12
13
14
15
16
17

The Tribal-State Compact provides that "[f]or the purposes of this Gaming Compact, the Tribal Gaming Operation shall: ... [c]arry no less than five million dollars ... in public liability insurance for patron claims, and ... the Tribe [shall] provide reasonable assurance that those claims will be promptly and fairly adjudicated, and that legitimate claims will be paid.... [T]he Tribe shall adopt and make available to patrons a tort liability ordinance setting forth the terms and conditions, if any, under which the Tribe waives immunity to suit for money damages resulting from intentional or negligent injuries to person or property at the Gaming Facility or in connection with the Tribe's Gaming Operation, including procedures for processing any claims for such money damages...." Compact § 10.2(d).[1]

18
19
20
21
22
23
24
25

The Compact does not provide a private right of action for a patron to sue to enforce the Compact's terms. The Compact provides that only the signatories–the Tribe and the State–may enforce its terms. Each signatory executed a limited waiver of its sovereign immunity from suit to allow only the other party to enforce its rights under the Compact. *See* Compact § 9.4(a)(1). The waivers of immunity are premised on the condition that "[n]o person or entity other than the Tribe and the State is party to the action," and that "[i]n the event of intervention by any additional party into any such action without the consent of the Tribe and the State, the waivers of either the Tribe or the State provided for herein may be revoked."

26
27
28

---

[1]  In the brief in support of the Motion to Dismiss, Sycuan states that a copy of the Compact is available at http://www.cgcc.ca.gov/enabling/tsc.pdf. (Doc. # 25-1 at 5). Harris does not challenge the authenticity of this document. The Court takes judicial notice of the Compact. *See North County Community Alliance, Inc. v. Salazar*, 573 F.3d 738, 746 n.1 (9th Cir. 2009) ("We take judicial notice of the [tribal] Ordinance and the letter from the [National Indian Gaming Commission] approving it. Both documents are available to the public.").

Compact §§ 9.4(a)(3) & 9.4(b).

The Ninth Circuit has held that federal question jurisdiction exists for signatories to enforce gaming compacts under the IGRA. *See Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997) ("The Compacts quite clearly are a creation of federal law; moreover, IGRA prescribes the permissible scope of the Compacts. We conclude that the Bands' claim to enforce the Compacts arises under federal law and thus that we have jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1362."). In this case, by contrast, a *non-signatory* to the Compact is attempting to enforce an arbitration award. The SAC does not allege facts indicating that any interpretation of the Compact will be necessary to resolve Harris's claim, or that any interpretation of the Compact was necessary in the underlying arbitration. It is irrelevant that Sycuan might raise a defense which requires the interpretation of the Compact or the IGRA. *See Vaden*, 129 S. Ct. at 1272.

When faced with a similar situation, the court in *Unite Here* stated:

> Unlike the *Cabazon* dispute, however, private enforcement of a [tribal ordinance] arbitration award is farther removed from applying federal law to a State-Tribal dispute involving an explicit IGRA provision or Gaming Compact contingency. Because neither the IGRA nor *Cabazon* expressly confer federal jurisdiction for this type of action, the Court is mindful of '[becoming] the arbiter of any and all disputes that may arise out of [gaming compacts].' In short, the Court does not consider a [tribal ordinance] or arbitration award violation on par with a *Cabazon* gaming compact claim.

*Unite Here*, 583 F. Supp. 2d at 1197 (quoting *Cabazon*, 124 F.3d at 1064 (Wiggins, J., dissenting)).

Consistent with *Unite Here*, the Court concludes that the allegations in the SAC related to the Compact are insufficient to confer federal question jurisdiction.

## D.   IGRA

"[W]here IGRA creates a private cause of action, it does so explicitly.... Where a statute creates a comprehensive regulatory scheme and provides for particular remedies, courts should not expand the coverage of the statute." *Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000) (citations omitted); *see also Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1248-49 (11th Cir. 1999) (listing the "multitude of express remedies" in the IGRA, and stating that "[t]he existence of these various express

remedies is a clear signal that we should not read into IGRA the implied right of action asserted by the State"). "[N]owhere does IGRA expressly authorize private individuals to sue directly under the statute for failure of a tribe ... to comply with its provisions." *Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1232 (10th Cir. 2003). In *Hein*, the Ninth Circuit concluded that "IGRA provides no general private right of action." *Hein*, 201 F.3d at 1260; *see also Hartman*, 319 F.3d at 1233 ("[W]e hold that IGRA contains no implied private right of action in favor of an individual seeking to enforce compliance with the statute's provisions.").

The SAC does not allege that Harris's cause of action arises from any of the express remedies in the IGRA. The SAC cites two IGRA provisions: 25 U.S.C. § 2710(d)(1)(C) ("Class III gaming activities shall be lawful on Indian lands only if such activities are ... conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State...."), and 25 U.S.C. § 2710(d)(3)(C)(i) ("Any Tribal-State compact ... may include provisions relating to ... the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity...."). (SAC ¶ 10). However, the SAC does not allege that these provisions of the IGRA were violated. Even if the SAC had alleged that they were violated, the "IGRA provides no general private right of action." *Hein*, 201 F.3d at 1260.

The Court concludes that the allegations in the SAC related to the IGRA are insufficient to confer federal question jurisdiction. *See Crosby Lodge, Inc. v. Nat'l Indian Gaming Ass'n*, No. 06cv657, 2007 WL 2318581, at *4 (D. Nev., Aug. 10, 2007) ("[I]t is ... well settled that Congress did not intend to provide for a private right of action to enforce IGRA.... IGRA contemplates a multitude of specific causes of action that may be brought by specific entities or persons. None of these provisions are applicable in this case. Accordingly, all claims against the Tribal Defendants shall be dismissed....") (citations omitted).

E.      Violation of "a Duty of Good Faith"

The SAC provides: "Implicit in the Federal pre-emptive regulation of Indian Gaming and the linked provisions of IGRA, the California Tribal Gaming Compact, and the Tribal Tort

ordinance at issue here, is a duty of good faith in the implementation of these enactments.  In doing the things herein above alleged, and in repudiating its own Federally-based tort ordinance, the [Defendant] herein has violated its duty of good faith, all to the prejudice and damage to plaintiff."  (SAC ¶ 13).  In her brief in opposition to the Motion to Dismiss, Harris states: "It must be emphasized that plaintiff's present complaint does not rest on a claim of direct violation of IGRA or its subsidiary, constituent enactments, but upon a claim of bad faith in the implementation of these enactments.  *Tamiami* [*Partners, Ltd. v. Miccosukee Tribe of Indians of Florida,* 63 F.3d 1030 (11th Cir. 1995)], recognized this distinction, at page 1046, footnote 56."  (Doc. # 26 at 2).

*Tamiami* involved claims for breach of contract against an Indian tribe, and abuse of the licensing authority conferred by the IGRA against an Indian tribe and individual defendants.  The portion of the opinion cited by Harris states:

> [Plaintiff]'s ... claim is brought under IGRA and the [National Indian Gaming Commission]'s regulations against the Tribe and the Gaming Agency. [Plaintiff] contends that the Tribe, through its Gaming Agency, has abused the licensing authority conferred by the statute and the regulations by refusing to license [plaintiff].  [Plaintiff] seeks an order declaring such an abuse of authority and enjoining the Gaming Agency to issue the requested licenses.  Although IGRA does not expressly provide a right of action for such relief, Tamiami contends that such a right of action is implicit under IGRA's regulatory scheme.

*Tamiami*, 63 F.3d at 1046; *see also id*. at 1046 n.56 ("We presume that [plaintiff] does so because it could have no statutory claim unless this right of action is implied in IGRA.").  The Eleventh Circuit held that federal question jurisdiction existed over this claim because it was "based directly on IGRA and [National Indian Gaming Commission]'s regulations."  *Id*. at 1047.  However, the Eleventh Circuit affirmed the dismissal of the claim on the grounds that, "because IGRA provides [plaintiff] no right of action, [plaintiff] has failed to state a claim for relief."  *Id*. at 1048.  The Eleventh Circuit stated:

> [Plaintiff]'s ... claim–that the Tribe, operating through its Gaming Agency, has refused to issue licenses in violation of the statute and regulations–fails because IGRA provides it no right to relief.  This result should come as no surprise; ... the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person....

> [A]fter examining the IGRA regulatory scheme, we find nothing in the statute's language, or in the legislative history, to indicate that Congress implied the right of action [plaintiff] presents as its ... claim for relief.  Congress, however, did

provide other private rights of action and did so explicitly.... In the face of these express rights of action, we adhere to a frequently stated principle of statutory construction: when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. Accordingly, we decline [plaintiff]'s invitation to read into IGRA the right of action [plaintiff] asserts as its ... claim.

*Id.* at 1049 (quotations omitted).

Unlike the claim at issue in *Tamiami,* Harris's claim in the SAC does not require interpretation of the IGRA in order to resolve the matter. And even if this Court were to conclude that Harris's "bad faith" claim was sufficient to confer subject matter jurisdiction, the Court would next conclude, as in *Tamiami*, that "because IGRA provides [Plaintiff] no right of action, [Plaintiff] has failed to state a claim for relief." *Id.* at 1048; *see also Hein*, 201 F.3d at 1260 (citing *Tamiami*, 63 F.3d at 1049, in support of its holding that the "IGRA provides no general private right of action").

The Court concludes that the allegations in the SAC related to the "duty of good faith in the implementation" of the IGRA, the Compact and the Ordinance, are insufficient to confer federal question jurisdiction. In the alternative, the Court concludes that this claim fails to state a claim for relief.

## III.   Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss the Second Amended Complaint is **GRANTED**. (Doc. # 25). The Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(1), or, alternatively, 12(b)(6). The Clerk of the Court shall enter judgment of dismissal without prejudice.

DATED: December 18, 2009

**WILLIAM Q. HAYES**
United States District Judge